**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:12-CV-699-DCK**

| | |
|---|---|
| RICKY L. NELSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  **ORDER** |
| | ) |
| STEVEN K. MONTGOMERY, | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** on "Defendant's Motion For Judgment On The Pleadings" (Document No. 14). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and this motion is now ripe for disposition. Having carefully considered the motion, the record, and applicable authority, the undersigned will <u>deny</u> the motion.

### I. PROCEDURAL BACKGROUND

*Pro se* Plaintiff Ricky L. Nelson, ("Plaintiff" or "Nelson") filed his original "Complaint" (Document No. 1) in this Court on October 23, 2012. "Defendant's Motion For A More Definite Statement" (Document No. 7) was filed on December 21, 2012. On February 13, 2013, the Honorable Graham C. Mullen granted "Defendant's Motion For A More Definite Statement," and ordered Plaintiff to amend his Complaint within ten (10) days. (Document No. 11). Judge Mullen specifically opined that

> Any claim for fraud requires a plaintiff to "state with particularity the circumstances constituting fraud . . ." Fed. R. Civ. P. 9(b). A complaint that fails to allege, among other things, "the time, place and contents of the false representations . . ." is not stated with the requisite particularity. <u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 784 (4th Cir. 1999). The Court

> finds that it would be unreasonable to require the Defendant to respond to Plaintiff's claims for constructive fraud, fraud by omission and common law fraud unless Plaintiff amends his Complaint to set forth for each cause of action a more definite statement alleging the specific representation(s) or omission(s) Plaintiff believes supports each type of fraud alleged and when each misrepresentation or omission occurred.

Id.

On February 22, 2013, Plaintiff filed his "Amended Complaint" (Document No. 12). The "Amended Complaint" asserts the following causes of action: (1) breach of fiduciary duty; (2) constructive fraud; (3) constructive trust; (4) fraud by omission; (5) common law fraud; and (6) unfair and deceptive trade practice. (Document No. 12). Defendant Steven K. Montgomery ("Defendant" or "Montgomery") filed his "Answer And Affirmative Defenses" (Document No. 13) on March 11, 2013.

Defendant's "Motion For Judgment On The Pleadings" (Document No. 14) and "Memorandum Of Law In Support…" (Document No. 15) were filed on March 27, 2013. On April 24, 2013, "Plaintiff's Responses To Defendant's Motion For Judgment On The Pleadings" (Document No. 19) was filed. "Defendant's Reply To Plaintiff's Responses To Defendant's Motion For Judgment On The Pleadings" (Document No. 20) was filed April 29, 2013. As such, the pending "Motion For Judgment On The Pleadings" is ripe for review and disposition.

Following the parties' "Joint Stipulation of Consent To Exercise of Jurisdiction by a United States Magistrate Judge" (Document No. 17) filed on April 19, 2013, the undersigned issued a "Pretrial Order And Case Management Plan" (Document No. 24) on May 8, 2013.

## II. STANDARD OF REVIEW

A motion for a judgment on the pleadings is to be decided under the same standard as a motion to dismiss brought under Fed.R.Civ.P. 12(b)(6). Burbach Broadcasting Co. of Delaware v. Elkins Radio, 278 F.3d 401, 405 (4th Cir. 2002). "Therefore, the motion cannot succeed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Williams v. Frontier Spinning Mills, Inc. 386 F.Supp. 2d 491, 493 (2005) (quoting Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)), cert. denied, 510 U.S. 828 (1993).

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1960 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

> The Supreme Court has also opined that
>
> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" In addition, when ruling on a

3

> defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (citations omitted).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

**A. Factual Background**

On or about March 30, 2002, Defendant filed "Articles Of Incorporation" with the Secretary of State of North Carolina for Commencement Specialists, Inc. ("CSI"), an all-digital commencement photography company. (Document No. 12, p.5) see also; (Document No. 12-1). Defendant became the President, an employee, and the majority shareholder (with 52% of shares) of CSI. Id. Plaintiff became the Vice President, an employee, and a minority shareholder (with 30.5% of shares) of CSI. Id. Plaintiff's investment in CSI was to "be non-monetary in nature and in the form of expertise, intellectual property, management and 'sweat equity.'" Id. The remaining shares of CSI were held by Jeffrey Moore ("Moore"), a financial management consultant with 10% of the shares, and Ralph Auletta ("Auletta"), a photography and equipment consultant with 7.5% of the shares. Id.

On or about November 5, 2005, Plaintiff was diagnosed with a life threatening illness – Viral Encephalitis, which required several days of hospitalization and extended treatment. (Document No. 12, p.8). In or about January 2006, "Plaintiff began requesting work from and

4

participation in, the day to day operations from the CSI office in Charlotte, NC. These requests were denied by CSI employees." (Document No. 12, p.8). "Between February 1, 2006 and June 30, 2006 [Plaintiff] did perform some on location site work duties for CSI of a non-administrative nature." (Document No. 12, p.9).

On August 1, 2006, Plaintiff signed a CSI "Shareholder Agreement" (Document No. 12-2), confirming, *inter alia*, the distribution of shares as discussed above. (Document No. 12, p.9). Then, on or about August 10, 2006, Defendant removed Plaintiff from the CSI Corporate Board and appointed Eileen Montgomery, Defendant's wife. Id. Plaintiff alleges that on or about October 4, 2006, Defendant "covertly" acquired Moore's 10% share holdings, in violation of the "Shareholders Agreement" and Defendant's fiduciary duties. Id. Defendant presented Plaintiff with a termination letter (Document No. 12-3), terminating Plaintiff's employment with CSI, on or about November 16, 2006. (Document No. 12, p.10).

Plaintiff contends that sometime between January 15, 2007 and June 30, 2007, Event Photography Group Incorporated ("EPG") first attempted to purchase or acquire CSI. (Document No. 12, p.10). Plaintiff further contends that Defendant "never disclosed" this information, or other subsequent attempts by EPG to purchase or acquire CSI, in "direct breach of the Defendant's Fiduciary Duties as an officer and shareholder of CSI." (Document No. 12, pp.10-11). In addition, Plaintiff asserts that Defendant purposefully kept from him that CSI had relocated to a "company incubator program located at the Ben Craig Center" in early 2007. (Document No. 12, p.11).

Plaintiff also asserts that on multiple occasions between January 2007 and June 21, 2008, he and/or his counsel were informed by Defendant and/or his counsel that "CSI had no value and that there had been no offers to purchase or acquire CSI." (Document No. 12, p.11-12).

Between January 26, 2007 and March 6, 2008, Defendant and/or his counsel sought to purchase Plaintiff's CSI shares, and asserted that such sale was mandatory under the "Shareholders Agreement." (Document No. 12, p.12). Following Plaintiff's repeated refusals to sell, CSI filed a "Verified Complaint" against Plaintiff in the Superior Court of Mecklenburg County on December 10, 2007. (Document No. 12-4). CSI's "Verified Complaint" asserted causes of action for: (1) breach of contract – non-compete and confidentiality agreement; (2) misappropriation of trade secrets; (3) unfair and deceptive trade practices; and (4) punitive damages. Id.

On or about April 3, 2008, CSI's state court action was sent to arbitration with the American Arbitration Association. (Document No. 12, p.13). In lieu of arbitrating or further litigating CSI's claims, CSI, Plaintiff, Defendant and Auletta executed a "Settlement Agreement Mutual Release And Covenant Not To Sue" (Document No. 12-6) on or about June 21, 2008. Id.

On or about October 25, 2009, Plaintiff learned that CSI had been sold to EPG. Plaintiff contends that EPG purchased CSI in early 2009 for two million dollars ($2,000,000), and that Defendant and EPG "purposefully and knowingly" delayed the finalization of the purchase agreement until Defendant had acquired Plaintiff's CSI shares. (Document No. 12, p.14).

Based on the foregoing, Plaintiff's "Amended Complaint" asserts causes of action for: (1) breach of fiduciary duty; (2) constructive fraud; (3) constructive trust; (4) fraud by omission; (5) common law fraud; and (6) unfair and deceptive trade practice. (Document No. 12, pp.14-26).

The "Amended Complaint" initially contends that "the events and transactions giving rise to the claims of this complaint occurred or concern action which occurred while [Plaintiff] and Defendant were both Corporate Officers of CSI." (Document No. 12, p.6). However, the

undersigned notes that the "Amended Complaint" makes several allegations in support of its claims regarding transactions or events that occurred well after Plaintiff was removed from CSI's corporate board. (Document No. 12, pp.9-14). Viewing the Amended Complaint in the light most favorable to the *pro se* Plaintiff, the undersigned will construe Plaintiff's allegations as extending through June 21, 2008, rather than the date Plaintiff was removed from CSI's corporate board, August 10, 2006.

**B. Motion For Judgment On The Pleadings**

The crux of "Defendant's Motion For Judgment On The Pleadings" is that the parties' "Settlement Agreement Mutual Release And Covenant Not To Sue" (Document No. 12-6) ("Settlement Agreement"), which is an attachment to the "Amended Complaint," precludes all of Plaintiff's claims. (Document No. 14). Specifically, Defendant relies on the following language from the Settlement Agreement to support his request for judgment on the pleadings:

> [Plaintiff] . . . unconditionally releases, discharges, and will forever hold harmless the CSI parties and their agents, employees, representatives, administrators, attorneys, insurers, shareholders, officers, directors, . . . from each and every claim, cause of action, right, liability or demand of any kind or nature arising on or prior to the date hereof that Nelson or any of the above had, has or might claim to have against the CSI parties….
>
> [Plaintiff] . . . covenants not to sue the CSI Parties or to file or pursue any other type of action of any nature on account of or in any way related to any claim released hereby.

(Document No. 14, pp.1-2; Document No. 15, p.5) (citing Document No. 12-6, pp.3-4). "Defendant's Memorandum…" further notes that the "Settlement Agreement" states that it "is a compromise reached among the Parties for a complete and final settlement of all claims, differences and causes of action between or among the CSI parties and Nelson, whether known or unknown and related in any way to the [state court] Lawsuit or to the Arbitration."

Defendant asserts that the "Amended Complaint" "does nothing more than recite facts and assert causes of action that (although denied) relate to claims that existed prior to the Settlement Agreement." (Document No. 14, p.2). As such, Defendant argues that Plaintiff's claims here are barred because he broadly released "all claims he 'had or may have had,'" and/or because of his covenant not to sue "on account of or in any way related to any claim released hereby." (Document No. 15, p.8) (quoting Document No. 12-6). Defendant further argues that "Plaintiff had actual knowledge of facts giving rise to all claims for which he now seeks relief. Consequently, any claim that existed as of June 21, 2008 has been released." (Document No. 15, p.12). Defendant concludes that the "Settlement Agreement, including its global release and covenant not to sue, "unequivocally prohibit[s]" Plaintiff's current claims. (Document No. 15, p.13).

"Plaintiff's Response…" contends that "a majority of the facts supporting the causes of action" in the Amended Complaint were unknown to Plaintiff until after October 25, 2009. (Document No. 19, pp.3-4). It is on that date that Plaintiff purportedly first learned of the sale of CSI to EPG. (Document No. 19, p.3). Plaintiff asserts that the "discovery of this information prompted an investigation and thus the discovery of the systematic 'Freeze Out' scheme" which in turn led to this lawsuit. Id. Plaintiff alleges that Defendant "purposefully withheld valuable information" prior to the "Settlement Agreement," and that the Settlement Agreement was executed "without full and fair disclosure of relative facts." (Document No. 19, pp. 4, 6).

The undersigned observes that several of Plaintiff's factual allegations in the "Amended Complaint" were known, or knowable, long before the "Settlement Agreement" was executed on or about June 21, 2008. For example, Plaintiff asserts that during 2002-2003, Defendant claimed 100% ownership of CSI on his tax returns when he was actually only a 52% shareholder, thus

depriving Plaintiff of certain deductions.  (Document No. 12, pp.7-8).  Likewise, Plaintiff's termination from the CSI corporate board and then later from CSI employment in 2006 were obviously known well in advance of the parties' "Settlement Agreement."  As such, it seems that any claims relying on such factual allegations would likely be precluded by the "Settlement Agreement."

However, the undersigned also recognizes that Plaintiff's allegations include assertions that Defendant "purposefully," "covertly" and "fraudulently" "denied, omitted and/or concealed" certain facts from Plaintiff.  (Document No. 12).  For example, Plaintiff clearly alleges that Defendant:  (1) covertly acquired Moore's 10% of shareholdings in violation of the "Shareholder Agreement";  (2) improperly concealed ongoing communications and/or negotiations between CSI and EPG regarding EPG's interest in purchasing CSI;  and (3) secretly relocated CSI to the Ben Craig Center.  Id.  Viewing the "Amended Complaint" in the light most favorable to the *pro se* Plaintiff suggests that these facts adequately support plausible claims.

In short, the undersigned is not persuaded by Defendant's argument that "Plaintiff had actual knowledge giving rise to all claims for which he now seeks relief.  Consequently, any claim that existed as of June 21, 2008 has been released."  (Document No. 15, p.12).  To the contrary, the essence of Plaintiff's claims is that Defendant deliberately and improperly withheld critical information from Plaintiff up to and through June 21, 2008.  Under the circumstances, the undersigned is satisfied that the "Amended Complaint" "contains 'enough facts to state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S.Ct. at 1937 (quoting Twombly, 550 U.S. at 544).  Although the undersigned finds Defendant's arguments regarding the application of the "Settlement Agreement" compelling in part, dismissal of this matter prior to

discovery would be premature. Following discovery, Defendant may renew some, or all, of his current arguments in an appropriate dispositive motion.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that "Defendant's Motion For Judgment On The Pleadings" (Document No. 14) is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall file a Notice identifying their mediator on or before **August 15, 2013**. See (Document No. 24, p.5).

**SO ORDERED**.

Signed: July 23, 2013

David C. Keesler
United States Magistrate Judge